Jonathan Dodev,

c/o  6312 South 161st Way
Gilbert, Arizona
(480) 457-8888 Phone
(480) 457-8887 Facsimile
dodev@hotmail.com

*Pro Se*

**FILE ON DEMAND**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Jonathan Dodev,** | **Case No.**  CV-16-02976-PHX-DGC |
| **Plaintiff,** | |
| **v.** | **COMPLAINT** |
| **SMITH'S FOOD & DRUG CENTERS, INC., D/B/A FRY'S FOOD STORES, A/K/A FRY'S FOOD STORES OF ARIZONA, INC., A/K/A THE KROGER CO., DOES 1-10,** | **FOR DISCRIMINATION, WRONGFUL TERMINATION AND DAMAGES** |
| **Defendant.** | **JURY TRIAL DEMANDED** |

**COMES NOW** Claimant, Jonathan Dodev, in *pro se*, ("Plaintiff") with his Complaint against Smith's Food & Drug Centers, Inc., d/b/a Fry's Food Stores, Does 1 through 10, ("Defendant") and alleges as follow:

**I**
**INTRODUCTION**

1. Plaintiff brings this action against Defendant to remedy discrimination on the workplace bases of faith [religion] in violation of Title VII of the Civil Rights Act of

- 1 - | Page of Discrimination & Wrongful Termination Complaint

1964, 42 U.S.C. §2000(e) *et seq.* as amended ("Title VII"), resulting in wrongful termination, loss of wages, change of career and emotional distress.

## II
## JURISDICTION AND VENUE

2. The jurisdiction of this Court is pursuant to Title VII § 706(f)(3), 42 U.S.C. § 2000e-5(f)(3) *et seq.*

3. Venue is pursuant to 28 U.S.C. 1391(b)(2), (c) and (d). Venue lies in the District of Arizona as the unlawful employment practices alleged herein were committed within jurisdiction of the United States District Court for the District of Arizona; specifically, all acts and/or omissions occurred in Gilbert, Arizona, Maricopa County.

4. Damages and other appropriate equitable relief are sought pursuant to 42 U.S.C. § 2000e-5(g).

## III
## PARTIES

1. Plaintiff, Jonathan Dodev at all time material hereto is a Citizen of Arizona.

2. All matters material hereto occurred in Maricopa County, State of Arizona.

3. Plaintiff, Jonathan Dodev at all time material hereto was employed by Defendant.

4. Defendant, Fry's Food Stores, owns and operates in the State of Arizona about 125 combination food and drug stores under the Fry's Food & Drug, Fry's Marketplace, Fry's Signature and Fry's Mercado banners.

- 2 - | Page of Discrimination & Wrongful Termination Complaint

5. The company's office address is 500 South 99th Avenue, Tolleson, AZ 85353.

6. Fry's Food Stores is a Trade Name registered with Arizona Corporation Commission, with primary business type Retail Supermarkets, owned by SMITH'S FOOD & DRUG CENTERS, INC, an Arizona company.

7. Fry's Food Stores of Arizona, Inc. operates as a subsidiary of The Kroger Co.

8. The Kroger Co., main office is 1014 Vine Street Cincinnati, Ohio 45202.

9. Defendant is an employer within the meaning the Equal Employment Opportunity Act of 1972.

10.    DOE 1 through 10 are unknown type of entities and/or employees of Defendant.

## IV
## GENERAL FACTUAL CLAIMS

11.    Plaintiff is a European immigrant, brought to Arizona by his parents at the tender age of 5.

12.    Plaintiff's parents left their respected jobs and well-branded names in their homeland in pursuit of a better future for him and his sister.

13.    The heart-aching decision to immigrate was not vested in economic gains but in religious freedoms, as Bulgaria (the homeland) did not have any functional synagogues—at the time—since World War II.

14.    Soon after their arrival to Arizona in 2002, Plaintiff's family joined

- 3 - | Page of Discrimination & Wrongful Termination Complaint

Chabad of the East Valley, consequently renamed to The Pollack Chabad Center for Jewish Life.

15.    Plaintiff was raised to keep his religion to himself while showing the utmost respect for others' personal beliefs.

16.    Although, not ultraorthodox, his family kept the Shabbat (Friday sunset to Saturday sunset), and attended all religious holidays.

17.    As far as he can remember Plaintiff has never missed a High-Holidays' synagogue attendance, especially Yom Kippur [The Day of Atonement] being the most solemn day of cleansing and repentance in the Jewish faith.

18.    At a young age Plaintiff was interested in acting and modeling and when he was 13 he already started having professional shoots with various photographers.

19.    He became the face of multiple establishments, brands, organizations, clothing lines, and so on.

20.    Plaintiff's face is perhaps best known through the Veterans of Foreign Wars ("VFW") Help a Hero campaign as every single year, America gets saturated with life-sized cutouts of him, pictures and flyers with his face on them, all for the advocacy of donating to help our country's veterans.

21.    In his second year of High School, Plaintiff secured a varsity wrestling spot, along with being a honors and AP student.

22.    He was on the trampoline of a very promising fitness and high-fashion modeling career as many agents were in standby mode for him to turn 17 years of age

- 4 - | Page of Discrimination & Wrongful Termination Complaint

in order to model particular high-value shoots, mandating certain age.

23.    Besides his modeling success Plaintiff was an NCAA athlete with full-ride scholarships, contingent on his wrestling performance, being offered to him.

24.    Keeping a level-head, Plaintiff searched for an entry level job that a 16 year old student can apply for, and came across Fry's Food Stores ("Fry's").

25.    On or about June 30, 2013 Plaintiff applied for a position with Fry's.

26.    On or about July 23, 2013 Plaintiff was hired by Fry's as a courtesy clerk at store #670, located at 6470 South Higley Road, Gilbert, Arizona.

27.    When the opportunity presented itself Plaintiff explained to his manager that he can work any other day but Erev Shabbat (Friday evening) because of his religion [Jewish] - 42 U.S. Code § 2000e(j).

28.    Under any other circumstances Plaintiff was going to inform his employer that he cannot work from Friday evening till Saturday evening.

29.    However, after family discussion on the subject, taking under consideration that he is holding an entry job that is not going to define his life-choices and career, Plaintiff and his family agreed to request only Friday evenings off, not to cause undue hardship to the employer's business.

30.    Regardless of management being aware of his religion and request of accommodation they continued to schedule Plaintiff for Friday's evening shifts.

31.    This happened in light of him being willing to work any other holiday that is commonly celebrated in America, such as Easter or Christmas.

- 5 - | Page of Discrimination & Wrongful Termination Complaint

32.   Each time, when Plaintiff requested changes on his Friday evening shift he was called into the office and cross-examined by management. *See* Declaration of Facts by Jonathan Dodev, attached hereto and incorporated herein, Exhibit A.

33.   Unware that Yom Kippur was coming up a bit early that year, 2013, Plaintiff was informed by his parents that he will not be able to work, Saturday, September 14, due to said holiday.

34.   Approximately 2 weeks prior to Yom Kippur Plaintiff logged into HR Express and requested that day off.

35.   Next time when Plaintiff was scheduled to work he spoke to manager Paul White, informing him that he cannot work September the 14th for religious reasons. (Plaintiff is not entirely positive that this is Paul's last name, he was the oldest manager at the time.)

36.   A few days later, Plaintiff spoke to a second manager Courtney Willis, requesting September 14 off, to which she did not express any objection, but replied that she would speak to higher management.

37.   His co-worker [retracted name for fear of retaliation against him] was standing by him and overheard the conversation with manager Courtney Willis.

38.   After celebrating Yom Kippur with his family in The Pollack Chabad Center for Jewish Life Plaintiff proceed to return to work as scheduled.

39.   On September 16, 2013 Plaintiff reported for his shift to be faced by hostile interrogation by managers Lisa Yazwa and Richard Riordan

- 6 - | Page of Discrimination & Wrongful Termination Complaint

40.    Plaintiff attempted to explain that he has requested a leave of absence for observance of Yom Kippur; he further attempted to explain that on that day observers do not eat food or drink any liquid along with not using any electronic devices, including phones and computers.

41.    Each time when he was asked why he did not call on September 14 to let them know that he is not coming to work Plaintiff tried to explain the significance of Yom Kippur and that he was not even allowed neither powering up his phone nor making a phone call.

42.    Plaintiff was sent home and put on suspension until September 20.

43.    Upon arriving home and explaining to his family what has transpired, Plaintiff's father immediately picked up the phone called Fry's and spoke to manager Richard Riordan.

44.    During the phone call Plaintiff's father tried once again to explain that his absence from work on September 14 was due to observance on Yom Kippur – a day of fasting and prayer, excluding the use of any electronic devices.

45.    The purpose of said phone call was to solicit apology from Fry's and move on as it became apparently obvious that Fry's management team had no understanding of the Jewish religion.

46.    Contrarily, manager Riordan sought no conciliation and hung up the phone. *See* Declaration of Facts by Ivaylo Dodev (Plaintiff's father) attached hereto and incorporated herein, Exhibit B.

- 7 - | Page of Discrimination & Wrongful Termination Complaint

47.    Being in disbelief, Plaintiff's father called Fry's central office and left a message for the person supervising store #670.

48.    On September 17, Plaintiff's father received a phone call from Leanne Downes-Gross, human resources, direct supervisor over store #670.

49.    During said phone conversation, Plaintiff's father, once again tried to explain the significance of this Jewish holiday to Ms. Downes-Gross.

50.    Ms. Downes-Gross promised to investigate the uncalled for work suspension of Plaintiff and to interview him over the phone in the presence of his father; as he was a minor [16 years at the time].

51.    Ms. Downes-Gross never called Plaintiff to interview him as promised.

52.    When Plaintif reported for his shift, after suspension, on September 20, Ms. Downes-Gross was waiting for him in the management's office.

53.    Plaintiff felt entrapped like an animal as he was expecting his father to be present during the meeting with Ms. Downes-Gross.

54.    During a brief conversation with Plaintiff, Ms. Downes-Gross accused him of lying and did not take any responsibility of what was forming to be a wanton discrimination against him.

55.    Ms. Downes-Gross terminated Plaintiff during that meeting [September 20, 2013].

56.    Although she enumerated more than once that she will speak to Plaintiff in the presence of his father, Ms. Downes-Gross did not follow-up on her promise.

- 8 - | Page of Discrimination & Wrongful Termination Complaint

57.    Being wrongfully terminated and discriminated upon for simply asking not to be scheduled to work Friday evenings, and unable to solicit any apology from Fry's; not even the slightest remorse for not being accommodating to him on the most-holy day on the Jewish calendar, Plaintiff had no other choice but file a complaint with the U.S. Equal Employment Commission ("EEOC").

58.    On or about November 19, 2013 Plaintiff filed a formal discrimination complaint with the EEOC. (Charging No. 540-2014-00020.)

59.    To reiterate: Plaintiff and his family filed the complaint with the EEOC after they exhausted all meaningful ways of communication with Fry's and were wholly convinced in their unwillingness to speak the truth and to mediate this shameful and unfortunate event of discrimination that has taken place among the vibrant community of Gilbert.

60.    Fry's illicit misrepresentation of the facts and the event that led to Plaintiff's wrongful termination were carried on to the EEOC.

61.    For the stated reasons, the EEOC was not able to conclude their investigation until they obtained a testimony from Plaintiff's coworker [retracted name for fear of retaliation against him], rebutting the accumulative misrepresentation from management in regards to Plaintiff's request for leave of absence to observe a Jewish holiday.

62.    On October 9, 2015 the EEOC issued a DETERMINATION reading in pertinent part:

- 9 - | Page of Discrimination & Wrongful Termination Complaint

I have considered all the evidence obtained during the investigation and find that there is reasonable cause to believe that Respondent violated Title VII when it failed to provide Charging Party with a reasonable accommodation for his religion and later suspended and terminated Charging Party after being made aware of his religion (Jewish) and his need for accommodation.

Attached hereto and incorporated herein, Exhibit C.

63.    After failed voluntary consolidation, under the auspices of the EEOC, Plaintiff brings this action for discrimination against Defendant.

64.    This action is filed within 90 days after Plaintiff received his NOTICE OF SUIT RIGHT, reading in pertinent part:

The EEOC found reasonable causes to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you.

Attached hereto and incorporated herein, Exhibit D.

65.    Plaintiff has been raised to believe that America is a beautiful and strong country in which people can pursue what they desire without fear of being discriminated against or persecuted for their faith and before he ever encountered Fry's, he genuinely believed that.

66.    Unable to get his job back with Fry's, after he had done nothing wrong, he has developed crippling anxiety due to the discrimination and being unable to prove to his family that he is not just a model [pretty face] and an athlete but an ordinary working teenager.

67.    He attempted to find work at many of the establishments near his home, but due to having been fired from the only official job he had ever had on record and

- 10 - | Page of Discrimination & Wrongful Termination Complaint

having a full time student schedule, he was turned away by every business that he applied to. This led to increasing feelings of worthlessness and affected him greatly.

68.     Following his termination, despite making varsity very early on, he could not wrestle for nearly the entire season that year due to depression, which caused him to lose all of the best schools that were offering him wrestling scholarships.

69.     His performance suffered greatly, as did his body. To illustrate, he started the wrestling season at 215lbs and 9% body fat and finished at 186lbs with the same body fat, effectively costing him nearly 30 pounds of muscle mass in only a couple of months.

70.     Horrific debilitation for a growing 16 years old boy that cause irreparable damages to his health till present days.

71.     Plaintiff has also suffered severe heart palpitations and undergone several EKG's and stress tests that found nothing abnormal with his heart, leaving the only cause of his cardiac disorder depression and anxiety.

72.     In addition, he came to develop extreme issues with bowels that continue to affect him to this day. Although he went through rigorous medical testing there was no presence of abnormal bacteria or any other physical complication that can justify abnormal bowel movement causing him to spend hours in the restroom on daily basis [till this day].

73.     Plaintiff's modeling contracts were brought to a halt due to the newly developed depression and discomfort with his own body fueled by his inability to

- 11 - | Page of Discrimination & Wrongful Termination Complaint

properly eat under stress.

74.    Actually, Plaintiff was avoiding eating food for fear of the consequences in the restroom.

75.    Every contract pending or promised based on his prior performance and/or photos on record was canceled the day when he sent updated pictures of himself, causing him to lose tens or hundreds of thousands of dollars.

76.    Most modeling agencies need updated recent pictures prior to signing a contract. In Plaintiff's case an agent would expect to see pictures of a 215-220lb fitness model not a 185lb lad, which ultimately would lead to cancelation as the cases herein.

77.    After spending months of seeking legal help and being unable to afford an attorney, Plaintiff files this action in *propria persona*.

78.    Plaintiff would take to hear all recommendations by this Court, including an appointment of an attorney per 42 U.S. Code § 2000e–5(f)(1)(B) reading in relevant part: *"Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security."*

**V**
**<u>FIRST CAUSE OF ACTION</u>**
**DISCRIMINATION IN VIOLATION OF TITLE VII ET SEQ.**

79.    Plaintiff reaffirms and realleges the general factual claims above by this reference.

- 12 - | Page of Discrimination & Wrongful Termination Complaint

80.    Defendant discriminated against Plaintiff in the terms and conditions of his employment on the basis of his religion in violation of Title VII.

81.    His unburdensome request not to be scheduled to work Friday evenings was never met.

82.    Each time when he asked his Friday evening shift to be changed he was called into the managers' office and interrogated with what seemed to be a humiliating tactic in order to convince him to give up on his religious request for accommodation.

83.    Every single time he had to explain the reasoning for not being able to work Friday evenings', making him feel inferior to hold a job; simply because he was Jewish.

84.    He was terminated from his job, after giving a proper notice that he will not work on the most-holy day in the Jewish calendar Yom Kippur.

## VI
## SECOND CAUSE OF ACTION
## WRONGFUL TERMINATION IN VIOLATION OF A.R.S. § 23-1501 ET SEQ

85.    Plaintiff reaffirms and realleges the general factual claims above by this reference.

86.    Defendant wrongfully terminated its employment relationship with Plaintiff in violation of A.R.S. § 23-1501(3)(b) for the reasons set forth below.

87.    Defendant wrongfully separated from Plaintiff because of being of Jewish faith and having a reasonable request not work Friday nights' shifts in violation of A.R.S. § 23-1501(3)(i) *"The civil rights act prescribed in title 41, chapter"*.

- 13 - | Page of Discrimination & Wrongful Termination Complaint

88. That reads in pertinent part:

A.R.S. § 41-1463(E). It is an unlawful employment practice for any employer, labor organization or joint labor-management committee controlling apprenticeship or other training or retraining programs, including on-the-job training programs, to discriminate against any individual because of the individual's race, color, religion, sex, age or national origin ...

89. And A.R.S. § 41-1463(B)(1). *"B. It is an unlawful employment practice for an employer:"*

(1) To fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, age or national origin or on the basis of disability.

90. *See* 42 U.S.C. §2000e-2(a)(1), incorporated herein by this reference.

## VII
## THIRD CAUSE OF ACTION
## RETALIATION IN VIOLATION OF 42 U.S.C. §2000(e) ET SEQ

91. Plaintiff reaffirms and realleges the general factual claims above by this reference.

92. Defendant retaliated against Plaintiff for making a reasonable request for accommodation, in particular asking not to be scheduled to work Friday evenings' shifts.

93. As a direct result of Defendant's retaliatory action Plaintiff was suspended and immediately thereafter terminated for taking a day off to observe Yom Kippur.

94. Defendant violated U.S.C. §2000(e)-3(a), reading in pertinent parts:

- 14 - | Page of Discrimination & Wrongful Termination Complaint

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because <u>he has opposed any practice made an unlawful employment practice by this subchapter</u> ...

## VIII
## FOURTH CAUSE OF ACTION
## INFLICTION OF EMOTIONAL DISTRESS AND DAMAGES

95.    Plaintiff reaffirms and realleges the general factual claims above by this reference.

96.    As a direct result of the retaliatory actions by Defendant, Plaintiff has suffered mental and emotional distress, pain and suffering, depression, anxiety, humiliation and embarrassment, along with irreparable health damages.

97.    Plaintiff is entitled to compensatory damages for the full amount allowed under Title VII and the Civil Rights Act, 42 U.S.C. §1981(a) for suffering direct and proximate injuries caused by Defendant.

98.    The actions of Defendant were done in reckless indifference to Plaintiff's federally protected religious rights; therefore he is entitled to be made whole for all financial losses for not being able to professionally model.

99.    Plaintiff is entitled to compensatory, punitive and exemplary damages for the undergoing mental and physical distress causing him to develop severe bowel disorder, present to this day, being a factor for him losing all of his wrestling scholarships contingently extended to him at the time.

- 15 - | Page of Discrimination & Wrongful Termination Complaint

100.    No financial compensation can reinstate Plaintiff on his 220lb varsity high school wrestling spot and give him a chance to win State or restart his modeling career, as both of these life-dreams come with an expiration date.

## IX
## CONCLUSION

101.    Giving Defendant the benefit of the doubt, assuming arguendo that they did not commit wonton discrimination against Plaintiff at the time when he reported for his shift after Yom Kippur; that benefit has no legs as Plaintiff and his father went above and beyond explaining the managers and Human Resources the manner of observing said holiday with only one request – apology – and they were abruptly shot down.

102.    Fry's disregarded entirely their pleas for reconciliation and Downes-Gross did not follow up on her promise to interview Plaintiff and his father.

103.    Instead she waited for him [entrapped] in the Fry's store after he reported for work (after the suspension) and accused him of lies. Showing no respect to him or his religious believes.

104.    After years of cover up with EEOC it has become painfully obvious that Fry's could not stand a young Jewish boy [16 years at the time] requesting few hours off from work, each Friday night to have a Shabbat dinner with his family, and when they were presented with an opportunity for separation they took it.

105.    Keeping a straight face all these years about their cover up of the fact that Plaintiff requested September 14, 2013 off.

- 16 - | Page of Discrimination & Wrongful Termination Complaint

106. With a great regret for Fry's management team Plaintiff attests to this Court that they have discriminated against him during his tenure in Fry's

107. Southeast Valley, the place where he grew up in, should not carry the stigma of antisemitism or tolerate employers as Fry's, therefore Plaintiff request this Court to give utmost attention to this action.

## X
## PRAY FOR RELIEF

108. **WHEREFORE**, Plaintiff prays this Court will enter judgment against Defendant and Unknown Defendants, and each of them, as follows:

    a. Declare Defendant's conduct complaint off herein in violation of Title VII;

    b. Declare Defendant's termination of Plaintiff's employment as wrongful and retaliatory;

    c. Award Plaintiff actual and compensatory damages, to be determined by the Jury at the time of trial;

    d. Award Plaintiff back pay, to be determined by the Jury at the time of trial;

    e. Award Plaintiff prospective back pay from his modeling career, to be determined by the Jury at the time of trial;

    f. Award Plaintiff punitive damages, to be determined by the Jury at the time of trial;

    g. Enter an Order compelling Defendant to publically apologize to the Jewish community at the Pollack Chabad Center For Jewish Life;

    h. For costs of suit herein incurred;

    i. For such other and further relief as is just, proper and equitable.

- 17 - | Page of Discrimination & Wrongful Termination Complaint

## XI
## DEMAND FOR JURY TRIAL

109. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

**RESPECTFULLY SUBMITTED** this 6th day of September, 2016

_____

**Jonathan Dodev**, *Pro Se* Plaintiff
**c/o 6312 South 161st Way, Gilbert, Arizona**
**(480) 457-8888 Phone**
**(480) 457-8887 Facsimile**

- 18 - | Page of Discrimination & Wrongful Termination Complaint

## VERIFICATION

I, the undersigned, attest and declare that I am the Plaintiff in the foregoing document entitled **COMPLAINT FOR DISCRIMINATION, WRONGFUL TERMINATION AND DAMAGES.**

I have read and know the contents thereof and certify that the matters stated therein are facts of my own knowledge, except as to those matters, which are therein stated upon my information or belief, and as to those matters I believe them to be correct.

I declare under the penalty of perjury of the Laws of Arizona that the foregoing is correct and complete to the best of my knowledge, information, and belief, and that this verification is executed in Gilbert, Arizona and is dated this 6th day of September, 2016.

**By Jonathan Dodev**, Plaintiff
**c/o 6312 South 161st Way**
**Gilbert, Arizona**

# Exhibit A

Jonathan Dodev,

c/o 6312 South 161st Way
Gilbert, Arizona
(480) 457-8888 Phone
(480) 457-8887 Facsimile
dodev@hotmail.com

*Pro Se*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Jonathan Dodev,** | |
| **Plaintiff,** | **DECLARATION OF FACTS** |
| **v.** | **BY JONATHAN DODEV** |
| **SMITH'S FOOD & DRUG CENTERS, INC., D/B/A FRY'S FOOD STORES, A/K/A FRY'S FOOD STORES OF ARIZONA, INC., A/K/A THE KROGER CO., DOES 1-10,** | |
| **Defendant.** | |

**I, Jonathan Dodev, being over 18 years of age and of sound mind, declare and state as follow:**

**1.** At any relevant time I was an employee of Fry's Food Stores.

**2.** At first opportune time, when I was scheduled to work Friday evening I spoke to management and explained that I cannot work these shifts because I'm Jewish.

1  Declaration of Facts by Jonathan Dodev

3.     I asked management not to be scheduled to work Friday evenings' shifts for religious reasons.

4.     I clearly expressed my willingness to work any other shift and especially any other holiday that are commonly celebrated such as Easter and Christmas.

5.     Regardless of my request, I was still being scheduled to work Friday evenings and met with hostility on the matter by managers Lisa Yazwa and Richard Riordan.

6.     Every single time when I asked to be swapped with some other employee for my scheduled Friday shift, I was called into the management office and cross-examined.

7.     Each time I had to explain that I am Jewish and cannot work Friday evening.

8.     As soon as I understood that Yom Kippur was falling on September 14, 2013 I went online and placed a request not to be scheduled to work on that day.

9.     Consequently, I spoke to two managers requesting this day off on two separate occasions.

10.     When I reported for my shift, following the Jewish holiday, I was placed on suspension.

2 | Declaration of Facts by Jonathan Dodev

**11.**    I went above and beyond, explaining to my mangers, Richard Riordan and Lisa Yazwa, the significance of this holiday, and how, due to religious reasons, I was unable to place a phone call on that particular day.

**12.**    They was unwilling to hear any of my explanations, including that I have requested this day off.

**13.**    When I reported to work, after my suspension, I was immediately terminated by Ms. Downes-Gross, who was waiting for me in the store, despite the fact that she had promised to interview me beforehand with my father present.

**14.**    During our short conversation she was not willing to listen to my reasons to why I was not working on September 14 and accused me of lying, blatantly calling me "a liar" and "too immature to own up to [my] mistakes".

**15.**    Ms. Downes-Gross never interviewed me prior to this meeting or showed any attempt to hear my part of the story.

I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct.

Executed this 6th of September, 2016 at Gilbert, Arizona.

By Jonathan Dodev, Declarant
c/o 6312 S 161st Way
Gilbert, Arizona 85298
(480) 457-8888

3 | Declaration of Facts by Jonathan Dodev

# Exhibit B

Jonathan Dodev,

c/o  6312 South 161st Way
    Gilbert, Arizona
    (480) 457-8888 Phone
    (480) 457-8887 Facsimile
    dodev@hotmail.com

*Pro Se*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Jonathan Dodev,** | |
| **Plaintiff,** | **DECLARATION OF FACTS** |
| **v.** | **BY IVAYLO DODEV** |
| **SMITH'S FOOD & DRUG CENTERS, INC., D/B/A FRY'S FOOD STORES, A/K/A FRY'S FOOD STORES OF ARIZONA, INC., A/K/A THE KROGER CO., DOES 1-10,** | |
| **Defendant.** | |

**I, Ivaylo Dodev, being over 18 years of age and of sound mind, declare and state as follow:**

   1.    I am Jonathan Dodev's father.

   2.    On or about Rosh Hashanah (the Jewish New Year), 2013 me and my wife started reminding Jonathan that he needs to ask his managers to take the day off on Yom Kippur.

1 | Declaration of Facts by Ivaylo Dodev

3. It is my belief that he has requested that day off online as I was standing right behind him and looking at his computer screen as he did so.

4. Each time when we dropped him off at work we reminded him to ask for that day off, September 14, being fully aware that he was just 16 and this was his first job.

5. September 16, Jonathan went to work as scheduled and shortly thereafter, he came home.

6. He informed me that he was suspended because he did not work September 14 and he did not call them that day, purportedly violating no show/no call policy.

7. My first reaction was: - Did you speak to a manger and explaining that you cannot call on Yom Kippur?

8. After his positive answer I immediately called the store and was connected to Richard Riordan, assistant store manager.

9. My first question was if he was aware that Jonathan was suspended for taking a day off to observe Jewish holiday.

10. He gave me a positive answer and informed me that he was one of the people who suspended him.

11. I proceed to explain that he has asked for this day off and could not possibly call that day because we do not use any electronic devices on Yom Kippur.

2 Declaration of Facts by Ivaylo Dodev

12.    Each time when I tried to speak Mr. Riordan he told me: "that's all I can tell you, you have to speak to him".

13.    To which I replied: - he is 16 and I want to hear your part of the story.

14.    Mr. Riordan continued to allude that I have to speak to my son and was unwilling to listen to me as I was explaining that no Jew is allowed to work on that day.

15.    Mr. Riordan was rude and intolerant during our short phone conversation and hung up on me.

16.    I immediately called Fry's corporate office and asked to speak to the supervisor; upon being connected, I left a voice message.

17.    On the following day, September 17, I received a phone call from Ms. Downes-Gross.

18.    I explained to Ms. Downes-Gross what has transpired.

19.    Ms. Downes-Gross never apologized to me that the manager that she was overseeing was rude, disrespectful, and hung up the phone on me.

20.    She promised to call Jonathan and interview him with me present since he was a minor.

21.    Ms. Downes-Gross never called again or interviewed Jonathan.

22.    Until this day Jonathan battles depression and ostracism from his peers.

3 ‖ Declaration of Facts by Ivaylo Dodev

23.    Until this day Jonathan suffers emotional distress and a debilitating medical condition that makes him feel inferior to his peers.

I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct.

Executed this 6th of September, 2016 at Gilbert, Arizona.

By Ivaylo Dodev, Declarant
c/o 6312 S 161st Way
Gilbert, Arizona 85298
(480) 457-8888

4    Declaration of Facts by Ivaylo Dodev

# Exhibit C

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Phoenix District Office**

3300 N. Central Avenue, Suite 690
Phoenix, AZ 85012-2504
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Phoenix Status Line:  (602) 640-5000
TTY (602) 640-5072
FAX (602) 640-5071

Charge No. 540-2014-00020

Jonathan Dodev
6312 South 161st Way
Gilbert, AZ 85298                     Charging Party


Fry's Food Stores
Po Box 1043
Tolleson, AZ 85353                    Respondent


## D E T E R M I N A T I O N

I issue the following determination on the merits of this charge.

Respondent is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended (Title VII).  Timeliness and all other requirements for coverage have been met.

Charging Party alleged that he was discriminated against in violation of Title VII in that he was placed on suspension following his absence from work for the Jewish holiday of Yom Kippur. Charging Party alleged that he entered his religious accommodation request for time off through the time keeping system and through a verbal request of management, but upon his return from suspension he was terminated for violating the "No Call/No Show" policy.

I have considered all the evidence obtained during the investigation and find that there is reasonable cause to believe that Respondent violated Title VII when it failed to provide Charging Party with a reasonable accommodation for his religion and later suspended and terminated Charging Party after being made aware of his religion (Jewish) and his need for accommodation.

This determination does not conclude the processing of this charge. The Commission will begin conciliation efforts to resolve all matters where there is reason to believe that violations have occurred. The confidentiality provisions of Title VII and Commission Regulations apply to information obtained during conciliation. A Commission representative will contact each party in the near future to begin conciliation.

On behalf of the Commission

OCT 0 9 2015
_____
Date

Rayford O. Irvin
District Director

# Exhibit D

EEOC Form 161-A (11/09)                    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

To:  Jonathan I. Dodev                             From:  Phoenix District Office
     6312 South 161st Way                                 3300 North Central Ave
     Gilbert, AZ 85298                                    Suite 690
                                                          Phoenix, AZ 85012

☐   On behalf of person(s) aggrieved whose identity is
    CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 540-2014-00020 | **Amy Burkholder,**<br>**Supervisory Investigator** | **(602) 640-5019** |

## TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge.  The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you.  In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case.  This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

## - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_____                    JUN 1 6 2016
**Elizabeth Cadle,**                                (Date Mailed)
**Acting District Director**

cc:  David R. Owens
     KROGER
     1014 Vine Street
     Cincinnati, OH 45202